IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOHN H. WOODEN,                           )
a/k/a JABARI I. MANDELA,                  )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )          Case No. 1:24-cv-01052-JDB-tmp
                                          )
WILLIAM LEE, *et al.*,                    )
                                          )
          Defendants.                     )

---

ORDER MODIFYING DOCKET,
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS,
DISMISSING THE COMPLAINT WITH PREJUDICE IN PART AND WITHOUT
PREJUDICE IN PART,
AND
GRANTING LEAVE TO AMEND CLAIMS DISMISSED WITHOUT PREJUDICE

---

<u>INTRODUCTION AND MODIFICATION OF THE DOCKET</u>

Before the Court are the pro se complaint (Docket Entry ("D.E.") 1) filed by the Plaintiff,

John Henry Wooden aka Jabari Issa Mandela, for screening pursuant to 28 U.S.C. § 1915(e)(2),

and the motion to dismiss the complaint filed by the Defendants, William Byron Lee, Governor of

the State of Tennessee; David Rausch, Director of the Tennessee Bureau of Investigation ("TBI");

Frank Strada, Commissioner for the Tennessee Department of Correction ("TDOC"); Chris

Hansen, Assistant TDOC Commissioner; Millicent Mann, TDOC West Region Specialized

Caseloads District Director; TDOC Probation/Parole Managers Joe Rudolph and David Miller;

Christina Davidson, TDOC Probation/Parole Supervisor; TDOC Probation/Parole Officers Joe

Lanier and Rose Pittman[1]; and Mike Adler, Ph.D., member of the Tennessee Sex Offender

Treatment Board.  (D.E. 34.)

The Clerk is DIRECTED to MODIFY the docket to:

(1) correct the spelling of Defendant Raush's name to "David Rausch";

(2) substitute Defendant Hansen (current Assistant TDOC Commissioner) for
Defendant Lisa Helton (former Assistant TDOC Commissioner).  *See* Fed. R. Civ.
P. 25(d);  *see also*  https://www.tn.gov/content/dam/tn/correction/documents/
AnnualReport2024.pdf?utm_source=chatgpt.com  (State of Tennessee 2024
Annual Report, showing Hansen as Assistant TDOC Commissioner) (last accessed
August 22, 2025); and

(3) add the State of Tennessee as a Defendant.

For the reasons explained below, the motion to dismiss is GRANTED in part and DENIED

in part and the complaint is DISMISSED WITH PREJUDICE IN PART and WITHOUT

PREJUDICE IN PART.

<u>BACKGROUND</u>

In 1982, Wooden was convicted of second-degree burglary, aggravated rape, aggravated

assault, and aggravated sexual battery.  *See State v. Wooden*, 658 S.W.2d 553, 555 (Tenn. Crim.

App. 1983), *abrogated on other grounds by State v. Dyle*, 1993 WL 467949 (Tenn. Crim. App.

Nov. 16, 1993).  His respective sentences were six to fifteen years, three to nine years, thirty-five

years, and life, all of which were to be served consecutively.  *See Wooden v. State*, 898 S.W.2d

752, 753 (Tenn. Crim. App. 1994).  He was released on parole in October 2022.

He filed the complaint in this matter on March 8, 2024, alleging that various provisions of

the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and

Tracking Act of 2004, Tennessee Code Annotated §§ 40-39-201 to -218 (the "SORVTA") are

---

[1]Defendants Mann, Rudolph, Miller, Davidson, Lanier, and Pittman are collectively
referred to as the "Parole Personnel Defendants."

unconstitutional. He is designated a violent sexual offender and must comply with the SORVTA for life.

He complains that, under the SORVTA, sexual offenders must register and comply with all obligations imposed by the statute for at least ten years, while violent sexual offenders must do so for life and that a registrant's classification is based on the offense of conviction. In his pleading, Wooden alleges Defendants violated

(1) the Ex Post Facto Clause by enforcing against him:

(a) the SORVTA's requirement that his information be published on Tennessee's sex offender registry website (the "Website Provision");

(b) the SORVTA's requirement that he report monthly to update the sex offender registry database (the "Reporting Requirement");

(c) the SORVTA's requirement that he undergo drug tests (the "Drug-Testing Requirement");

(d) the SORVTA's requirement that he observe (i) geographic restrictions on where he can live or work in relation to the presence of children (the "Child Access Geographic Restriction") and (ii) prohibitions against him living with minor children (the SORVTA's "No-Minors Residence Restriction"); and

(e) the SORVTA's requirement that he participate in a sex offender treatment program (the "Treatment Requirement");

(collectively referred to as the "Ex Post Facto Claim");

(2) the Equal Protection Clause by:

(a) preventing him, as a black sex offender parolee, from finding employment with a commercial trucking company; and

(b) requiring stricter sex offender compliance from him because he is a black parolee;

(collectively referred to as the "Equal Protection Claim"); and

(3) the First Amendment by enforcing the SORVTA's prohibition against him attending church.

3

(the "First Amendment Claim.")  Each Defendant is sued in his or her official and individual capacities.  Plaintiff seeks monetary damages, declaratory relief, and injunctive relief.

On April 3, 2024, the Court stayed the case pending the Sixth Circuit's May 15, 2024, decision in *Does #1-9 v. Lee*, 102 F.4th 330 (6th Cir. 2024), in which nine prior sex offenders brought § 1983 actions against Lee and Rausch, alleging that, in violation of the Ex Post Facto Clause, the plaintiffs therein were placed on Tennessee's sex offender registry.  (D.E. 8 at PageID 36 ("a stay is warranted given the dispositive impact on this case of the Sixth Circuit's impending ruling in *Lee*").)  The Sixth Circuit issued its decision on May 15, 2024.  That day, this Court vacated the stay, reopened the case, directed the Clerk to issue summonses for the sole purpose of responding to Wooden's request for injunctive relief, and allowed a hearing on the request.  (D.E. 17.)  On September 11, 2024, the Court ordered summonses to issue "for the purpose of allowing [Defendants] to respond to Wooden's complaint."  (D.E. 28 at PageID 225, 228 ("[T]o perform *Lee*'s screening analysis of Wooden's Ex Post Facto Clause claim, the Court needs the Defendants' answer to the complaint").)  The Defendants were served on September 30, 2024.  (D.E. 32, 33.)

On October 21, 2024, Defendants responded to the complaint by filing the pending dispositive motion, arguing that the claims against Lee, Rausch, and Adler should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and that all of Plaintiff's claims should be dismissed for failure to state a claim to relief under Fed. R. Civ. P. 12(b)(6).  (D.E. 34.)  Specifically, they contend that Plaintiff:

(1) lacks standing to sue Lee, Rausch, and Adler;

(2) challenges provisions of the SORVTA that "are clearly constitutional" (*id.* at PageID 254);

(3) fails to sufficiently allege a violation of the Ex Post Facto Clause;

(4) fails to allege a violation of the First Amendment; and

(5) fails to allege an equal protection violation.

No response to the motion has been filed and the deadline for doing so has expired. *See* LR 12.1(b).

The movants seek to dismiss the complaint in its entirety. However, the motion fails to address that Wooden has sued them in both their official and individual capacities and that he seeks monetary, declaratory, and injunctive relief against each Defendant. Furthermore, Plaintiff alleges the Ex Post Facto Claim against all Defendants, but the motion's subject matter jurisdiction arguments regarding Plaintiff's lack of ex post facto standing relate only to Lee, Rausch, and Adler.

Given that the Court has granted Wooden leave to proceed herein in forma pauperis, the Court will address all claims and requests for relief in the complaint in the process of conducting the § 1915(e)(2) screening.

## TENNESSEE SEX OFFENDER REGISTRY LAW

The extensive history of the SORVTA's amendments informs the Court's analysis of the complaint and motion. *See Lee*, 102 F.4th at 333-34. Tennessee's first sex offender registration law, known as the Sexual Offender Registration and Monitoring Act ("SORMA") became effective January 1, 1995, and required individuals convicted of certain sexual offenses to register with the TBI "within ten days of release without supervision from probation, parole, or incarceration," and to update essential information with the TBI regularly thereafter. *Doe v. Haslam*, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117, at *2 (M.D. Tenn. Nov. 9, 2017). The SORMA has been amended multiple times and was superseded by the current SORVTA, which has itself been amended. The history of changes in Tennessee sex offender registration laws includes:

- <u>1994</u>: SORMA was signed into law, effective January 1, 1995. The initial statute imposed basic reporting and registration requirements on most prior sexual offenders. All information was kept confidential to the TBI, and reporting was done by mail.

- <u>1996</u>: SORMA was amended to expand the applicable class of offenders.

- <u>1997</u>: SORMA was further extended to offenders "who [ ] completed diversion and had their records expunged," or committed some non-sexual offenses against minors. It also "permitt[ed] TBI to require that registrants provide current photographs."

- <u>2000</u>: SORMA was amended to impose a mandatory 180-day sentence for falsification, to make registration life-long for certain extreme offenses, and to require offenders to report to the county where they live or go to school within ten days of moving.

- <u>2002</u>: SORMA was amended to require offenders working or studying at "institution[s] of higher learning" to report such work within ten days and to make that information public for offenders convicted after October 27, 2002.

- <u>2003</u>: SORMA was amended for the first time, to include restrictions on where offenders "could live, work, or travel." The amendments prohibited registrants from living or working within 1,000 feet of a school or childcare facility, or the home of their victim(s) or their family members, among other geographical restrictions.

- <u>2004</u>: The General Assembly repealed SORMA and replaced it with the SORVTA, which continues in force today. The SORVTA largely continues the same classification system but also divides registrants into two classes—sexual offenders or violent sexual offenders—based on their offense of conviction. The new statute abolished the reporting-by-mail scheme and requires registrants to report and register in person to a designated law enforcement agency. The SORVTA increased the amount of information to be reported and imposed fees.

- <u>2005</u>: The General Assembly amended the SORVTA to increase the fees and add reportable information requirements.

- <u>2006</u>: Amendments to the SORVTA prohibited registrants convicted of crimes against minors from living or working near schools and other children's facilities.

- <u>2007</u>: Amendments to the SORVTA added more events reportable within forty-eight hours and made all registrants' information public, regardless of offense.

- <u>2008</u>: Amendments added more reportable information and disclosed some information—such as email addresses—to certain businesses. The

amendments also prohibited registrants whose offense was against minors from dressing in certain costumes around minors.

- 2009: Amendments excluded all registrants, regardless of offense, from schools, playgrounds, and other public facilities if the registrant has reason to believe that children are present, and prohibited registrants from "standing or sitting idly within 1,000 feet of such locations" without a legitimate reason.

- 2010: Amendments increased information required to be reported, required all registrants to carry a photo ID, and prohibited more than two registrants from living in the same house.

- 2011: Amendments imposed reporting restrictions for international travel and permitted libraries to ban registrants.

- 2014: Amendments prohibited all registrants from living or working within 1,000 feet of a school or other children's facilities, authorized local authorities to notify residents when a registrant lives within an area, and imposed a lifetime registration requirement on offenders whose victims were twelve years old or younger.

- 2015: Amendments expanded the information registrants were required to report and prohibited all registrants from "being alone with a minor in a 'private area.'"

*Lee*, 102 F.4th at 333-34 (citing *Haslam*, 2017 WL 5187117, at *2) (internal citations omitted).

The *Lee* Court observed:

In summary, the current [SORVTA] law does three things: First, it establishes reporting rules which require registrants to appear in-person quarterly at a local law enforcement agency and update information such as their residential address, vehicles, life details, and social security number. Second, it publishes this information—including identity, criminal history, physical traits, address, employer, driver's license number, vehicle license plates, etc.—for public use. Third and finally, it restricts [registrants'] geographical movement, particularly where they can live, work, and stay.

*Id*. at 334.

## LEGAL STANDARDS

### Screening of the Complaint.

Pursuant to § 1915, federal courts "shall dismiss [a] case . . . if the court determines that"

the complaint (1) "is frivolous or malicious," (2) "fails to state a claim upon which relief may be

granted," or (3) "seeks monetary relief from a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). In assessing whether the complaint states a claim on which relief may be
granted, the court applies the standards under Rule 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556
U.S. 662, 677-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); and *Hill
v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Applying those standards, the district court
accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the
allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th
Cir. 2011) (quoting *Iqbal*). The court does not assume that conclusory allegations are true, because
they are not "factual" and all legal conclusions in a complaint "must be supported by factual
allegations." *Iqbal*, 556 U.S. at 679.

Fed. R. Civ. P. 8 provides guidance on this issue. It requires a complaint to contain "a
short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.
P. 8(a)(2). It also necessitates factual allegations to make a "'showing,' rather than a blanket
assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. Though the statement need not
contain detailed factual allegations, it must contain "factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.
at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me
accusation." *Id.*

Courts screening cases accord more deference to pro se complaints than to those drafted
by lawyers. *Lucas v. Chalk*, 785 F. App'x 288, 290-91 (6th Cir. 2019). Such "complaints are to
be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore
be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712
(6th Cir. 2004)). Pro se litigants are not, however, exempt from the requirements of the Federal
Rules of Civil Procedure. *Lucas*, 785 F. App'x at 290; *see also Brown v. Matauszak*, 415 F. App'x

608, 612-13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'").

<u>Federal Rule of Civil Procedure 12(b)(1)—Subject Matter Jurisdiction</u>**.**

Federal courts are courts of limited subject matter jurisdiction; they can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). A federal district court must assure itself of its subject matter jurisdiction—including a plaintiff's standing to sue, either generally or with respect to a particular defendant—before deciding a claim on its merits. *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 475-77 (6th Cir. 2023); *In re: Flint Water Cases*, 53 F.4th 176, 188 (6th Cir. 2022). The federal court has a "time-honored obligation, even *sua sponte*, to dismiss any action over which it has no subject-matter jurisdiction." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978). "Subject-matter jurisdiction refers to the classes of cases that fall within a court's adjudicatory authority." *Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)) (internal quotation marks omitted). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Taylor*, 990 F.3d at 496 (citing *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

Plaintiffs bear the burden of proving that their suit is a "Case[ ]" or "Controversy" within the jurisdiction of the United States courts. U.S. Const. art. III, § 2, cl. 1; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements."). To do so, they must establish "the irreducible constitutional minimum of standing" by showing that: (1) they "suffered an 'injury in fact,'"" (2) the injury is "fairly traceable" to conduct of the defendants, and (3) the court's powers of decision would provide them redress. *Lujan*, 504 U.S. at 560-61 (cleaned up). Without these elements, a district

court lacks authority to hear a case. Standing goes to the fundamental power of the court to hear the matter. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012). Constitutional standing is essential to subject matter jurisdiction—*i.e.*, whether the court has authority to hear the case. *Lee*, 102 F.4th at 335; *see also* U.S. Const. art. III, § 2, cl. 1.[2]

Rule 12(b)(1) permits a party to move to dismiss for lack of subject matter jurisdiction. *See, e.g.*, *W6 Rest. Grp., Ltd. v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025). Plaintiffs have the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). To overcome a motion to dismiss for lack of subject matter jurisdiction based on lack of Article III standing at the pleading stage, a plaintiff must clearly allege facts demonstrating standing. *Patton v. Fitzhugh*, 131 F.4th 383, 393 (6th Cir. 2025), *pet. for cert. filed* (No. 25-50) (S. Ct. July 15, 2025). A challenge to federal court subject matter jurisdiction can come in two forms. "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When ruling on such a challenge, a court must accept all well-pleaded allegations in the complaint as true. *Id.* A factual attack claims that the court lacks subject matter jurisdiction no matter what plaintiff has pleaded and requires the trial court to weigh the evidence before it in determining whether that is the case. *Id.* A dismissal for lack of subject matter jurisdiction must be without prejudice, as a court without jurisdiction "has no power but to dismiss the case" and "may not address the merits." *Taylor*, 990 F.3d at 496.

---

[2]*See also Moms for Liberty–Wilson Cnty., Tenn. v. Wilson Cnty. Bd. of Educ.*, ___ F.4th ___, 2025 WL 2599923, at *5 (6th Cir. Sept. 9, 2025) ("Standing is a jurisdictional requirement"); *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (if plaintiff lacks standing, the court lacks subject matter jurisdiction).

Federal Rule of Civil Procedure 12(b)(6)—Failure to State a Claim.

The rule provides the defense of failure to state a claim upon which relief can be granted.[3] On a Rule 12(b)(6) motion, district courts consider not whether a plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. For purposes of this determination, courts construe a complaint in the light most favorable to a plaintiff and assume the veracity of all well-pleaded factual allegations. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 678-79; nor are courts "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, courts next consider whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Where a complaint's well-pleaded facts do not afford a plausible inference of more than a mere possibility of misconduct, "the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). As with the screening of the complaint, "conclusory allegations or legal

---

[3]The same analysis in a Rule 12(b)(6) motion is one of the criteria on which the district court screens a complaint. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

11

conclusions masquerading as factual conclusions" are also insufficient to survive a motion to dismiss under Rule 12(b)(6). *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Courts cannot create a claim that has not been spelled out in a pleading. *Brown*, 415 F. App'x at 613; *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003).

<u>ANALYSIS</u>

<u>Wooden's Equal Protection Claim for Money Damages and Prospective Injunctive Relief Against All Defendants in Their Official and Individual Capacities.</u>

In his Equal Protection Claim, Wooden avers that the Defendants "impermissibly burden[ed] him" as a black parolee with "strict application of the [SORVTA]" whereas similarly situated white parolees were not, alleging that:

> the Defendants[] failed to properly train their subordinates in a manner that arbitrarily discriminates against him by treating similar[ly] situated white parolee with convictions of committing sex offenses against children with out-of-state permits as a [Commercial Driver License ("CDL")] truck driver whereby refusing to issue same to [Wooden]. . .. The [D]efendants have established a practice of persuading employers not to hire plaintiff as a black parolee but does not use the same tactics to interfere with the employment of white parolees who are similarly situated trained truck drivers.

(D.E. 1 ¶¶ 19-20.) In support, he submits that, in the autumn of 2023, he "[met a white parolee that was in . . . the sex offender treatment program with [him]. [The white parolee] advised [Wooden] that he had been approv[ed] as a CDL licensed truck driver . . . and that none of the probation/parole officials contacted his truck employer to obtain their approval to list the owners/company trucks in the sexual offender registry data[]base." (D.E. 3-1 ¶ 15.) Plaintiff offers no facts about the nature of the white parolee's prior sex offense crime or his employer's job requirements.

Defendants argue in their motion to dismiss that Wooden "has not alleged facts sufficient to establish an equal protection violation." (D.E. 34-1 at PageID 267.) They contend that Plaintiff

"makes a conclusory allegation that, because he is [b]lack, he is treated differently as a 'class of one' than similarly situated white sex offender parolees." (*Id.*)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This clause is a "direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Fourteenth Amendment's guarantee of the "equal protection of the laws" bars state action that "either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). Claims advanced under the third category are referred to as class-of-one claims. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012).

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Coleman v. Kent*, No. 24-1737, 2025 WL 1768666, at *4 (6th Cir. June 26, 2025) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Under a "class-of-one" equal protection theory, a plaintiff must show that (1) the defendant "intentionally treated" plaintiff "differently from others similarly situated" in all relevant respects, and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The plaintiff must demonstrate that the defendants' conduct was "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). A class-of-one claim fails if the plaintiff is unable to identify

any similarly situated parties that were treated differently. *Stanislaw v. Thetford Twp.*, 515 F. App'x 501, 507 (6th Cir. 2024).

Because "the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors," the Sixth Circuit has stated that "a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012); *see also Stanislaw v. Thetford Twp.*, Case No. 25-1756, 2025 WL 233215, at *8 (6th Cir. Jan. 17, 2025) ("one of the most difficult legal challenges [is] an equal protection class of one claim"). To survive a Rule 12(b)(6) challenge, a plaintiff bears the burden of offering in the complaint "enough factual matter to plausibly show there was not '*any* conceivable basis' that rationally supported" the defendants' actions. *Rapp v. Dutcher*, 557 F. App'x 444, 449-50 (6th Cir. 2014) (citing *TriHealth*, 430 F.3d at 790).

The Court turns now to whether Wooden demonstrates the elements of his class-of-one equal protection theory.

### Rational Basis for Defendants' Actions

Wooden submits that, simply because "the [D]efendants contacted [his prospective employer] and told him that any trucks he allows [P]laintiff to drive had to be placed on the sex offender registry" (D.E. 1 ¶ 19.), the Defendants "arbitrarily discriminate[d] against" him by "persuading employers not to hire [him] [as] a black parolee." (*Id.*) He fails, however, to demonstrate "that there is no rational basis" for the Defendants' challenged action. *See Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009) (quoting *Village of Willowbrook*, 528 U.S. at 564). Because Tennessee law requires that *all* sex offenders' vehicle(s) be listed on the sex offender registry, *see* Tenn. Code Ann. § 40-39-206(d)(15), there *was* "'a[] conceivable basis' that rationally supported" the Defendants' actions as to Plaintiff, *see Rapp*, 557 F. App'x at 449-50

(citing *TriHealth*, 430 F.3d at 790). Wooden alleges no facts demonstrating that race was the reason why probation/parole officers contacted his prospective employer but not the white parolee's. Merely because Plaintiff insists the Defendants "arbitrarily discriminate[d]" against him because he is a black parolee (D.E. 1 ¶ 19) does not, without more, make it so.

*Similarly Situated Person*

Plaintiff alleges no facts about whether he and the white parolee are indeed "similarly situated" for purposes of equal protection analysis. The sole criterion he identifies as comparison between the white parolee and himself is their race. "Here, [p]laintiff ha[s] not presented any circumstances to show that [he] [is] similarly situated to any other prisoners . . .. There can be no . . . meaningful comparison for equal protection purposes between two [persons] who are not similarly situated." *See Anthony v. Bradley Cnty. Justice Ctr.*, No. 1:12-cv-303, 2015 WL 1206620, at *11 (E.D. Tenn. Mar. 17, 2015) (citing *Keevan v. Smith*, 100 F.3d 644, 649 (8th Cir. 1996) (internal citation omitted) . The Equal Protection Claim suffers that defect.

*Intentional Treatment*

Plaintiff makes a bare, conclusory allegation of "arbitrar[y] discriminat[ion]." (D.E. 1 ¶ 19.) That alone does not demonstrate the Defendants "intentionally treated" him differently on the basis of his race, as opposed to some other factor such as the requirements of the SORVTA. *See Franks*, 312 F. App'x at 766. Bare allegations of differential treatment are insufficient to establish an equal protection violation. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574-75 (6th Cir. 2008) ("[T]he failure to make any concrete allegations with respect to similarly situated persons mandates . . . [a finding] in the defendant's favor"); *see also Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 746-47 (6th Cir. 2002) (rejecting plaintiff's equal protection claim based on absence of specific allegations about similarly situated individuals). The complaint in this case is devoid of facts from which to plausibly infer that the Defendants required CDL employer truck

15

registration from Plaintiff on the basis of his race rather than on the basis of § 40-39-206(d)(15)'s requirements.

The complaint does not demonstrate any of the requisite prongs for an actionable class-of-one equal protection claim. The factual allegations of this claim, even if true, are insufficient to plausibly claim that the Defendants "intentionally treated" Wooden "differently from others similarly situated" in all relevant respects, and "that there is no rational basis for the difference in treatment." *See Village of Willowbrook*, 528 U.S. at 564. Plaintiff alleges nothing "more than a sheer possibility" that he is entitled to equal protection class-of-one relief. *See Iqbal*, 556 U.S. at 678. Therefore, the motion to dismiss is GRANTED as to the Equal Protection Claim for money damages and prospective injunctive relief against all Defendants in their official and individual capacities. The claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief pursuant to Fed. R. Civ. P. 12(b)(6).

<u>Wooden's First Amendment Claim for Money Damages and Prospective Injunctive Relief Against All Defendants in Their Official and Individual Capacities.</u>

Plaintiff avers that he "is not allowed to attend church to worship due to the church's child day care operation or education school programs. . . . [T]he Defendants' actions violate[] his First Amendment rights to worship[.]" (D.E. 1 ¶¶ 16, 22.) His allegations are construed as a claim that the SORVTA violates his free exercise rights under the First Amendment. He does not describe any specific occasions when the SORTVA prevented him from attending a particular church. Nor does he assert the SORVTA precludes him from practicing a specific religion.

The Free Exercise Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, *see Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940), provides that "Congress shall make no law . . . prohibiting the free exercise" of religion, U.S. Const. amend. I; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993); *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 296 (6th Cir. 2023), *cert. denied*, 144 S.

16

Ct. 1348 (2024).  "In any free exercise claim, the first question is whether 'the belief or practice asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'"  *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)) (alteration in original).  If the individual asserting a violation makes this threshold showing, the court then decides whether the "regulation impinges on [the person's] constitutional rights."  *Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  "[T]he regulation is valid if it is reasonably related to legitimate penological interests."  *Id.* (quoting *Turner*, 482 U.S. at 89).  The Supreme Court has held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment."  *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015) (citing *Emp. Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-82 (1990)).  "The right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'"  *Pleasant View Baptist Church*, 78 F.4th at 296 (quoting *Smith*, 494 U.S. at 878-79) (alterations omitted).  "Thus, a law that is neutral, generally applicable, and incidentally burdens religious practices usually will be upheld, whereas a law that discriminates against religious practices usually will be invalidated unless it is the rare law that can be justified by a compelling interest and is narrowly tailored to advance that interest."  *Id.* at 297 (quoting *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) (per curiam)) (brackets and internal quotation marks omitted).  The Sixth Circuit has emphasized that, when reviewing neutral laws of general applicability, courts

> do not apply a heightened standard of review because doing so would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind—ranging from compulsory military service, to the payment of taxes; to health and safety regulation such as manslaughter and child neglect laws, compulsory vaccination laws, drug laws, and traffic laws; to social welfare legislation such as minimum wage laws, child labor laws, animal cruelty

laws, environmental protection laws, and laws providing for equality of opportunity
for the races.

*Id.* (quoting *Smith*, 494 U.S. at 888-89).

In the pending motion, the Defendants argue that Wooden

does not plausibly allege that he is unable to practice his religion [or] that the
[SORVTA] has targeted his religious practice. . . .  Wooden is more than capable
of worshipping at any church or location which does not contain a childcare facility.
Wooden has not alleged difficulty in finding a church without childcare or has
consequently been unable to effectively practice his religion.

(D.E. 34-1 at PageID 266.)

Although Plaintiff maintains generally that he is not allowed to attend church or worship

where a church has child daycare operations or education school programs, he does not allege facts

demonstrating that he holds a particular belief or practice in his own "scheme of things," that any

such belief or practice is sincerely held, or that the SORVTA prohibited him from practicing such

sincerely held belief.  In addition, his blanket contention that the SORVTA "violates his First

Amendment rights to worship" (D.E. 1 ¶ 22) is not well-taken.  He alleges no facts in the complaint

from which it could plausibly be inferred that the SORVTA as applied to him is something more

than "neutral, generally applicable laws that incidentally burden the exercise of religion."  *See*

*Holt*, 574 U.S. at 356-57.  Applicable to all statutorily-defined sex offenders (regardless of age,

sex, race, or belief), the SORVTA is facially neutral and unconnected to any religion-based

discriminatory intent.  *See* Tenn. Code Ann. §§ 40-39-201 to -218.  The SORVTA neither

addresses religion nor prevents Wooden from practicing any sincerely held religious belief.  *See*

*id*.

At least one district court in this jurisdiction has rejected a free exercise claim in similar

factual circumstances.  In *Doe v. Rausch*, Case No. 3:20-cv-00728 (M.D. Tenn.), the plaintiff

alleged in his complaint that he had "historically attended" and "built personal relationships in" a

Jewish community center that had "a childcare/nursery attached to it."  *Rausch*, Case No. 3:20-cv-

00728, D.E. 1 ¶ 74.)  He further alleged that "[m]any of the other available centers for worship also either ha[d] childcare centers or minor children that attend[ed]" and that, "[a]s a result, SORVTA prohibit[ed] [his] physical presence during service and his ability to freely exercise his religious beliefs." (*Id.* ¶¶ 75-76.)  In that case, Rausch argued the plaintiff failed to state a free exercise claim because the SORVTA "neither addresse[d] religion nor prevent[ed] [a p]laintiff from practicing Judaism." *Rausch*, Case 3:20-cv-00728, 2022 WL 481240, at *4 (M.D. Tenn. Feb. 16, 2022).  In response, the plaintiff contended that the SORVTA "had the effect of prohibiting his presence in a building of worship because most Jewish Synagogues and Community Centers in Tennessee have schools on their grounds." *Id.*  Concluding that the plaintiff failed to allege a deprivation of his rights under the Free Exercise Clause of the First Amendment, the court granted Rausch's motion to dismiss. *Id.*; *accord Windwalker v. Governor of Alabama*, 579 F. App'x 769, 774 (11th Cir. 2014) (per curiam) (rejecting free exercise challenge because "nothing contained in [Alabama's sexual offender statutes] relates to a person's religious practice except in a single provision *permitting* sex offenders to change their name for religious reasons").

The factual allegations of the First Amendment Claim, even if true, do not state a claim entitling Wooden to relief.  He does not allege "more than a sheer possibility" that he is entitled to relief on his First Amendment Claim. *See Iqbal*, 556 U.S. at 678.  Therefore, the motion to dismiss is GRANTED as to the First Amendment Claim for money damages and prospective injunctive relief against all Defendants in their official and individual capacities.  The claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief pursuant to Fed. R. Civ. P. 12(b)(6).

Ex Post Facto Claim Against Defendant Lee.[4]

Suing Lee in his official and individual capacities, Wooden alleges in the complaint that

the Governor

> fail[ed] to require that the TBI director and the Department of Correction . . . operate
> their functions in compliance with the state law and federal laws.  Specifically, he
> has refused to direct both the TBI [d]irector and Commissioner of TDOC to make
> the necessary change in procedures to faithfully and full[y] perform their duties in
> compliance with the federal constitution laws.  The Governor's failure to perform
> his constitutional and statutory duties has result[ed] in all of the [D]efendants
> violating [P]laintiff's federal constitutional rights that forbid[] the application of ex
> post facto laws in violation of the United States Constitution and as such has caused
> [P]laintiff to be terminated and not hired at job positions where he is more than
> qualified and trained to perform.

(D.E. 1 ¶ 2.)

In the motion to dismiss, Lee challenges the Court's subject matter jurisdiction, arguing

that Wooden does not have standing to sue him because the constitutional violations alleged in the

complaint are not traceable to him.  Specifically, the Governor contends that he "does not enforce

the [SORVTA]" or "sex offender regulations," "[s]o 'whatever injury' Wooden 'may [be]

suffer[ing] is not fairly traceable' to Governor Lee."  (D.E. 34-1 at PageID 256 (emphasis

omitted).)  Lee argues that "[i]nstead, Tennessee relies on independent local police and district

attorneys to enforce the [SORVTA] regulations by prosecuting their violation as a separate state

offense."  (*Id.*)  The Defendants base their subject matter jurisdiction arguments on the Governor's

powers as chief executive of Tennessee and seem to contend indirectly that the Court lacks subject

matter jurisdiction over the Ex Post Facto Claim against Lee in his official capacity.

Lee's standing argument is a facial attack on subject matter jurisdiction.  *See Lee*, 102 F.4th

at 335 (constitutional standing is essential to subject matter jurisdiction—*i.e.*, whether the court

---

[4]The Court is "bound to consider the [Defendants'] [Rule] 12(b)(1) [contentions] first,
since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction."
*See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

has authority to hear this case); *Geomatrix*, 82 F.4th at 475-76 (a federal district court must assure itself of its subject matter jurisdiction—including a plaintiff's standing to sue). To carry his burden of establishing standing to sue the Governor, Wooden must establish (1) an "injury in fact," (2) the injury's traceability to the Governor's conduct, and (3) the injury's redressability by a decision in Plaintiff's favor. *See Lee*, 102 F.4th at 335; *Doe v. Rausch*, No. 3:24-cv-01403, 2025 WL 57711, at *7 (M.D. Tenn. Jan. 9, 2025) (citing *Lujan*, 504 U.S. at 560-61).

In *Lee*, the plaintiffs' lack of standing was a determinative issue for the district court's lack of subject matter jurisdiction over ex post facto claims against Governor Lee. The Sixth Circuit held that the plaintiffs lacked standing to sue the Governor in his official capacity because they did "not explain[] how the *Governor* caused the injury, a traceability problem, nor have they shown what a federal court could order the Governor to do or refrain from doing to give them relief—a redressability defect." *Lee*, 102 F.4th at 335-42 (internal quotation marks omitted). The Sixth Circuit further articulated:

> While it is true that governors often possess a general "take care" power to see that the laws of the state are enforced, it is well established that such power is insufficient, by itself, to confer standing. Therefore, although Tennessee's governor is tasked with such a duty by virtue of Article III, Section 10 of the Tennessee Constitution, a general allegation about the Governor's "take care" power does not suffice to invoke federal jurisdiction.
>
> Plaintiffs argue that not only does Governor Lee have a general duty to uphold the law, [but] that this general executive power to fire employees confers standing.
>
> This is a distinction without a difference. While it is true that the Governor possesses power as the chief executive to remove employees from their posts, or at least to initiate such proceedings, this does not give him a role in the enforcement of individual criminal laws beyond his general "take care" duty. Plaintiffs' argument is simply another way of invoking the Governor's general executive powers, which are insufficient alone to confer standing. . . . Therefore, no Article III case or controversy exists against Governor Lee[.]

*Id.* at 335-36 (internal citations and some quotation marks omitted).

21

Even taking into account the liberal pro se pleading standard, the Sixth Circuit's holding in *Lee* establishes that Wooden does not have standing to sue Lee in his official capacity on the Ex Post Facto Claim.  He has not pleaded any specific and plausible allegations demonstrating that the Governor enforces any of the SORVTA provisions Wooden challenges in the complaint or what Lee has done in his official capacity to injure Plaintiff.  For example, Wooden does not demonstrate that Lee enforced against him any particular SORVTA provisions, much less in a manner that caused him "to be terminated and not hired at job positions where he is more than qualified and trained to perform."  (*See* D.E. 1 ¶ 2.)

Instead, Plaintiff alleges only generally that Lee "has supreme executive power of the [S]tate, is ultimately responsible for the enforcement of the laws of the State and for supervision of all [S]tate departments, and is charged with taking care that all applicable federal and state laws are faithfully executed."  (*Id*.)  Those same "general 'take care' power" and "general duty to uphold the law" allegations against the Governor in *Lee* did "not suffice to invoke federal jurisdiction." *See Lee*, 102 F.4th at 335.  Wooden has not demonstrated traceability or redressability for standing against the Governor.  There is no Article III case or controversy to invoke federal jurisdiction. This Court, therefore, lacks subject matter jurisdiction over the complaint's official capacity Ex Post Facto Claim against Governor Lee in his official capacity.  *See Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) ("if . . . plaintiff has [no] standing, then the court lacks subject-matter jurisdiction"); *see also Davenport v. Rausch*, Case No. 3:23-cv-00197-TRM-JEM (E.D. Tenn. Dec. 18, 2024) (D.E. 45 at PageID 301-02) (concluding, in sex offender's ex post facto challenge to enforcement of the SORVTA, that plaintiff lacked standing over Governor Lee).

For these reasons, the motion to dismiss is GRANTED pursuant to Rule 12(b)(1) as the Ex Post Facto Claim for money damages and prospective injunctive relief against Governor Lee in

his official capacity, and the claim is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

The motion to dismiss is DENIED to the extent the Defendants argue that the Court lacks subject matter jurisdiction over the Ex Post Facto Claim against Governor Lee in his individual capacity.[5]    Rather, because Plaintiff does not allege facts demonstrating Lee's personal involvement in enforcement of the SORVTA against him, the Ex Post Facto Claim against this Defendant in his individual capacity fails to state a claim to relief and is DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6).

---

[5]In the dispositive motion, the Defendants do not specifically address the Ex Post Facto Claim against Lee in his individual capacity, even though Plaintiff presented such a claim.  The individual capacity Ex Post Facto Claim is not well-taken, however, because Wooden fails to allege facts stating a claim to relief (not, as the motion addresses, because of an absence of subject matter jurisdiction).

To state a claim under § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  To establish liability under § 1983 against an individual defendant acting under color of state law, a plaintiff must show that the defendant was "personally involved" in the unconstitutional incident.  *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020).  The Ex Post Facto Clause prohibits retroactive increase in the punishment for a crime after its commission and retroactive imposition of punishment for an act that was not punishable when committed.  *Mangum v. Lee*, No. 22-5660, 2023 WL 6130306, at *2 (6th Cir. July 10, 2023) (citing *United States v. Coleman*, 675 F.3d 615, 619 (6th Cir. 2012)).

For Plaintiff to have proceeded against Governor Lee in his individual capacity on the Ex Post Facto Claim, he would had to have alleged the Governor's personal involvement in enforcement of the SORVTA against him.  Wooden alleges only generally that Lee, as Governor of Tennessee, "fail[ed] to perform his constitutional and statutory duties . . . result[ing] in . . . violati[on] [of] plaintiff's federal constitutional rights that forbid[] the application of ex post facto laws[.]"  (D.E. 1 ¶ 2.)  Plaintiff alleges no SORVTA enforcement action taken against him that is traceable to Lee individually.  *See Lujan*, 504 U.S. at 560-61 (a plaintiff must demonstrate "the injury is 'fairly . . . trace[able]'" to conduct of the defendant); *cf.* D.E. 1 ¶ 2 (alleging only generally that Governor Lee "refused to direct both the TBI Director and Commissioner of TDOC . . . to faithfully . . . perform their duties in compliance with the federal constitution[al] laws").

<u>Defendant Adler In His Official and Individual Capacities.</u>

Suing Adler in his official and individual capacities, Wooden alleges that he is "head[6] of the Tennessee Sex Offender Treatment Board [('SOTB')]" and "is responsible for evaluating and selecting the persons convicted of sex offenses for mandatory placement in a sexual offender treatment program [('SOTP')] despite the clear and inequivalent [sic] language that such law does not pertain to persons convicted prior to 1997." (D.E. 1 ¶ 6.)

In the motion to dismiss, Adler challenges the Court's subject matter jurisdiction, arguing that, because he, as a member of the SOTB, "does not enforce any provisions of the [SORVTA]," he "cannot be enjoined from enforcing a law he does not enforce." (D.E. 34-1 at PageID 259.) He asserts that Plaintiff cannot demonstrate traceability for standing as to the Ex Post Facto Claim. Adler further submits that the SOTP Wooden complains of is a "parole requirement" and "not a requirement under the [SORVTA]." (*Id.* at 260 (citing Tenn. Code Ann. §§ 40-39-201 to -218).) Thus, according to Adler, Wooden's "parole officer, not Dr. Adler or the SOTB, enforces this [SOTP] requirement." (*Id.*)

Even taking into account the liberal pro se pleading standard, the Sixth Circuit's holding in *Lee* establishes that Wooden does not have standing to sue Adler in his official capacity for alleged violation of the Ex Post Facto Clause. Under Tennessee law, SOTB members' duties do <u>not</u> include enforcement of the SORVTA:

> The board shall carry out the following duties:
>
> (1) The board shall develop and prescribe a standardized procedure for the evaluation and identification of sex offenders. The procedure shall provide for an evaluation and identification of the offender and recommend behavior management monitoring and treatment based upon the knowledge that sex offenders are extremely habituated and that there is no known cure for the propensity to commit sex abuse. The board shall develop and implement measures of success based upon a no-cure policy for intervention. The board

---

[6]According to the motion to dismiss, Adler is a "*member* of" the SOTB. (D.E. 34-1 at PageID 259 (emphasis added).)

shall develop and implement methods of intervention for sex offenders that have as a priority the physical and psychological safety of victims and potential victims and that are appropriate to the needs of the particular offender; provided, that there is no reduction of the safety of victims and potential victims;

(2) The board shall develop guidelines and standards for a system of programs for the treatment of sex offenders that can be utilized by offenders who are placed on probation, incarcerated with the department of correction, placed on parole, or placed in community corrections.  The programs developed shall be as flexible as possible, so that such programs may be utilized by each offender to prevent the offender from harming victims and potential victims.  The programs shall be structured in a manner that the programs provide a continuing monitoring process, as well as a continuum of treatment programs for each offender as that offender proceeds through the criminal justice system, and may include, but shall not be limited to, polygraph examinations by therapists and probation and parole officers, group counseling, individual counseling, outpatient treatment, inpatient treatment, or treatment in a therapeutic community.  The programs shall be developed in a manner that, to the extent possible, the programs may be accessed by all offenders in the criminal justice system. . . .;

(3) The board shall develop a plan for the allocation of moneys deposited in the sex offender treatment fund created pursuant to § 39-13-708, among the judicial branch, the department of correction, and the department of children's services. . . .;

(4) The board shall research and analyze the effectiveness of the evaluation, identification, and treatment procedures and programs developed pursuant to this part.  The board shall also develop and prescribe a system for tracking offenders who have been subjected to evaluation, identification, and treatment pursuant to this part.  In addition, the board shall develop a system for monitoring offender behaviors and offender adherence to prescribed behavioral changes. . . .; and

(5) The board shall compile and make available on the board's website a list of approved sex offender evaluation providers and a list of approved sex offender treatment providers that the board deems fit, based upon the provider's specific training, experience, and professional licensure, to fulfill the objectives set forth in this section.

Tenn. Code Ann. § 39-13-704(d); *see also State v. Mounger*, 7 S.W.3d 70, 74 (Tenn. Crim. App.

1999) (citing § 39-13-704(d)).

The SOTP that Wooden criticizes Adler for enforcing is part of the Tennessee Standardized

Treatment Program for Sex Offenders.  *See* Tenn. Code Ann. §§ 39-13-701, 39-13-706.  The SOTP

is not part of the SORVTA. The SOTB, *inter alia*, develops the SOTP. *See* Tenn. Code Ann. § 39-13-704(d)(4). The SOTB and the SOTP do *not* relate to enforcement of the SORVTA. *See* Tenn. Code Ann. § 39-13-704(d)(1)-(5).

This is a traceability problem for Wooden's standing as to the Ex Post Facto Claim against Adler. He has not demonstrated how this Defendant caused his purported ex post facto injury from enforcement of the SORVTA. Nor has Plaintiff demonstrated what this Court could order Adler to do or refrain from doing to give him relief. This Court cannot compel Adler to take, or refrain from taking, action for which he has no statutory authority. This Court lacks subject matter jurisdiction over the Ex Post Facto Claim against Adler in his official capacity. *See Tennessee Gen. Assembly*, 931 F.3d at 507.

The motion to dismiss is GRANTED pursuant to Fed. R. Civ. P. 12(b)(1) as to the Ex Post Facto Claim against Adler in his official capacity. Therefore, the claim is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

The motion to dismiss is DENIED to the extent the Defendants argue that the Court lacks subject matter jurisdiction over the Ex Post Facto Claim against Adler in his individual capacity.[7]

---

[7]In the pending motion, the Defendants do not specifically address the Ex Post Facto Claim against Adler in his individual capacity even though Plaintiff has sued Adler in such capacity. The individual capacity Ex Post Facto Claim is not well-taken because Plaintiff fails to allege facts stating a claim to relief (not because of absence of subject matter jurisdiction, which is the dispositive motion's primary focus). Wooden has not pleaded any specific allegations about Adler's personal involvement in enforcement of the SORVTA against him. Adler's position on the SOTB statutorily charges him with carrying out the SOTP—not the SORVTA. Wooden alleges no SORVTA enforcement action taken against him that is traceable to Adler. *See Lujan*, 504 U.S. at 560-61. In addition, Tennessee law establishes that "[t]he [SOTB] board and the individual members of the board shall be immune from liability, whether civil or criminal, for the good faith performance of the duties of the board." Tenn. Code Ann. § 39-13-704(e). So, to the extent Plaintiff alleges misconduct by Adler in developing and implementing the SOTP, this Defendant is immune from such claims, provided he performed his duties in good faith. Wooden does not allege bad faith by Adler and nothing in the present record suggests it.

26

Because Wooden does not allege facts demonstrating Adler's personal involvement in enforcement of the SORVTA against him, the Ex Post Facto Claim against Adler in his individual capacity fails to state a claim to relief and is DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6).

Ex Post Facto Claim for Money Damages Against Strada, Hansen, and the Parole Personnel Defendants in Their Official Capacities.

As to a purported ex post facto violation by Defendants Strada and Hansen, Wooden alleges only that their

> personal failure to ensure the execution [of] the laws prescribed from the government of the agency is complied with, has resulted in the agency's employees applying unconstitutional acts and imposing unlawful procedures in the manner that their subordinate community supervisors have applied the restrictions to him as punishment for those persons paroled with convictions for crimes of sexual offenses occurring after the effective date of the act in year 2004.

(D.E. 1 ¶ 4.)  As to the Parole Personnel Defendants, Plaintiff avers they "have intentionally refused to comply and perform their duties as specifically described by state law and ha[ve] applied unconstitutional and unlawful acts of racial discrimination and in interfering with his constitutional rights to otherwise enjoy the freedoms not imposed by the imposition of his sentence."  (D.E. 1 ¶ 5.)  He further contends that these Defendants took

> steps to cause him to suffer a costly financial loss by requiring him to move out of the residence [for which] he prepaid two months' rent and a deposit, the termination of jobs, restricting him from relocating to accept to [sic] employment, notifying rental agencies of his intentions to live in a qualified location, denying his requests to move to Memphis where ready assistance is available for the re-entry of parolees, and contacting potential employers to persuade them not to hire plaintiff because of his sex offender registry status after not contacting employers of [w]hite truck drivers who are on the sex offender registry for committing sexual acts with minor children.

(*Id*.)

In the motion, Defendants do not address the Ex Post Facto Claim against Strada, Hansen, and the Parole Personnel Defendants in their official capacities.  At most, the Defendant's

argument that the complaint "challenges provisions of the [SORVTA] which are clearly constitutional" (D.E. 34 at PageID 254) could be construed to allege Wooden fails to state a claim of ex post facto violation against them.

The Ex Post Facto Claim against Strada, Hansen, and the Parole Personnel Defendants in their official capacities is not well-taken. "The Eleventh Amendment bars [§ 1983] suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). In *Will*, the Supreme Court explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." *Id.* Courts have also held that "the Eleventh Amendment immunizes departments and agencies of the states." *Dubuc v. Michigan Bd. of L. Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984)).

Here, the State of Tennessee, its officials, and its agencies are entitled to sovereign immunity, which bars claims sounding under § 1983. *See Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472, 488 (1987). Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). The TDOC is an agency of Tennessee, and is therefore immunized as well. *See Dubuc*, 342 F.3d at 615. Because Wooden sues Strada, Hansen, and the Parole Personnel Defendants in their official capacities as TDOC employees, his money damage claims against them are similarly barred. *See Will*, 491 U.S. at 71.

Furthermore, to the extent Plaintiff may be alleging supervisory liability against Strada and Hansen, such liability requires "'active unconstitutional behavior' on the part of the supervisor." *Zakora v. Chrisman*, 44 F.4th 452, 475 (6th Cir. 2022) (citing *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)), *cert. denied*, 143 S. Ct. 2608 (2023). Wooden does not allege that these Defendants took any specific action to enforce the SORVTA against him. (*See* D.E. 1 ¶ 4

28

(alleging generally that Strada and Hansen's "responsibilities are to oversee the community supervision of parolees"). The Ex Post Facto Claim for monetary damages against Strada, Hansen, and the Parole Personnel Defendants in their official capacities is DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1).

For the same reason, the Ex Post Facto Claim against Strada and Hansen in their individual capacities is DISMISSED WITHOUT PREJUDICE under Rule 12(b)(6) for failure to state a claim. Wooden alleges no SORVTA enforcement action taken against him that is traceable to Strada and Hansen individually. *See Lujan*, 504 U.S. at 560-61 (a plaintiff must demonstrate "the injury is 'fairly . . . trace[able]'" to the defendant's conduct).

The Ex Post Facto individual capacity claim against the Parole Personnel Defendants suffers the same pleading defect as to Defendants Mann, Rudolph, Miller, and Lanier. Wooden does not allege facts demonstrating injury that is traceable to specific conduct by these individuals enforcing the SORVTA in a manner that violated the Ex Post Facto Clause. For example, his allegations that they required him to participate in the SOTP do not support the Ex Post Facto Claim. The SOTP is a condition of Plaintiff's parole, not a SORVTA provision. *See* Tenn. Code Ann. §§ 39-13-701, -706. In the remainder of the complaint's allegations against the Parole Personnel Defendants, Wooden alleges no SORVTA enforcement action taken against him that is traceable to Mann, Rudolph, Miller, and Lanier individually. (*See*, *e.g.*, D.E. 1 ¶ 10 ("Defendant contacted the landlord . . ."); *id*. ¶ 12 ("defendants engaged in a practice of contacting the landlords of properties. . .."); *id*. ¶ 16 ("The defendants have banned plaintiff from associating with any of his minor family members . . .."); *id*. ¶ 19 ("The defendants have established a practice of persuading employers not to hire plaintiff a black parolee . . .."). For these reasons, the motion is DENIED to the extent the Defendants argue that the Court lacks subject matter jurisdiction over the individual capacity Ex Post Facto Claim against Mann, Rudolph, Miller, and Lanier. Rather,

the Ex Post Facto Claim against these Defendants in their individual capacities fails to state a claim to relief and is DISMISSED WITHOUT PREJUDICE in accordance with Fed. R. Civ. P. 12(b)(6).

As to Defendants Davidson and Pittman, however, Wooden alleges that they enforced the Child Access Geographic Restriction against him in November 2022:

> Defendant[s] Davidson and Pittman directed [P]laintiff to . . . move out all of his personal property from [his brother's] residence or he would be arrested because sex offenders cannot live in a household with minor children . . . .  Davidson told [Wooden] that . . . because his brother stay[ed] within 1,000 feet of a child day care, [P]laintiff could not stay with his brother.  Defendant Davidson advised him that she had no resources to assist him with housing.

(D.E. 1 ¶¶ 10-11.)  Plaintiff pleads specific plausible allegations that Davidson and Pittman were personally involved in the enforcement against him of the Child Access Geographic Restriction. The Sixth Circuit in *Does #1-5 v. Snyder*, 834 F.3d 696, 705-06 (6th Cir. 2016), as discussed more fully *infra*, found similar geographic restrictions in Michigan's sex offender registry statute unconstitutional.  Against the backdrop of *Snyder*, Wooden asserts "more than a sheer possibility" that he is entitled to Ex Post Facto Clause relief from Davidson and Pittman in their individual capacities regarding the Child Access Geographic Restriction.  *See Iqbal*, 556 U.S. at 678.  For these reasons, the motion is DENIED as to the Ex Post Facto Claim arising from the Child Access Geographic Restriction[8] against Davidson and Pittman in their individual capacities.

---

[8]Other than the Ex Post Facto Claim's allegations against Davidson and Pittman arising from the Child Access Geographic Restriction, all other individual capacity ex post facto allegations in the complaint against these Defendants fail to state a claim.  For example, Wooden alleges that Pittman required him to wear an ankle-monitoring device.  Such devices do not violate the Ex Post Facto Clause.  *See Doe v. Bredesen*, 507 F.3d 998, 1005-07 (6th Cir. 2007).  Plaintiff avers that Davidson "required [him] to report monthly to the parole office to complete a monthly report to update the sex offender registry[.]" (D.E. 1 ¶ 18.)  The Reporting Requirement, however, "fall[s] squarely within the legitimate regulatory scheme which Tennessee is constitutionally allowed to provide and maintain."  *See Lee*, 102 F.4th at 341.  Plaintiff contends that Davidson and Pittman issued false charges against him for violation of parole conditions.  But his contention relates to conditions of parole, not provisions of the SORVTA.  The same holds true for his allegation that Davidson enforced the Drug-Test Requirement against him.  This requirement is a condition of Plaintiff's parole, not a requirement of the SORVTA.  (*See* Tenn. Code Ann. §§ 40-39-201 to -218.)  Wooden seems to suggest that Davidson caused his loss of employment, but he

Ex Post Facto Claim Against Defendant Rausch.

Suing Rausch in his official and individual capacities, Plaintiff alleges that he

has refused to obey the ex post facto provisions of the Constitution [by] fail[ing] to supervise and make necessary corrective changes to prevent the Department of Correction parole officials from continuously [sic] applying the unconstitutional punishment that result[s] in the parole officers arbitrarily conducting acts of racially discrimination [sic] against him. . . .  As a result of applying the unconstitutional act to him and discriminating against him as a class of one, he has caused the sex offender registry to be used by the defendant parole officers and supervisors to *require that he move from the residence he shared with a family relative with minor aged children*[,] causing him to be homeless for the months of December 2022, January up to May 2023, causing his termination from employment, denied job opportunities at temporary employment agencies and CDL trucking lines, monthly office visits, monthly home visits, required sex offender treatment classes, *restricted from visiting his relatives' homes*, denied federal and [s]tate HUD as well as veteran assistance in housing placement.

(D.E. 1 ¶ 3 (emphasis added).)

Rausch challenges the Court's subject matter jurisdiction over the Ex Post Facto Claim, arguing that (1) Plaintiff lacks standing to sue him; (2) Wooden identifies no Tennessee statute that makes him a "state actor" for § 1983 purposes by giving him state authority to deprive Plaintiff of his federal constitutional ex post facto rights; and (3) he enjoys sovereign immunity because this case does not come within the "narrow exception" to the sovereign immunity doctrine.  The Court considers these assertions in turn.

*Standing*

*Lee* offers guidance for analysis of Rausch's standing argument.  There, the Sixth Circuit concluded that Rausch is subject to suit only "regarding those portions of Tennessee's statutes that come under his responsibility or enforcement authority."  *Lee*, 102 F.4th at 336.  The appellate

---

alleges no facts from which to plausibly infer that his job loss is traceable to Davidson.  (*See* D.E. 1 at PageID 9 (alleging only that "when [Wooden] notified [D]efendant Davidson of his employment at Conagra . . . and Kirkland . . . shortly thereafter each job notified [Wooden] that . . . he was terminated").)

court explained that "Rausch is tasked with a number of statutory duties related to the administration of Tennessee's sex offender statutes," including:

> designing and issuing the forms which registrants use to report their information, Tenn. Code. Ann. § 40-39-205(a), creating and maintaining the registry database, *id*. § 40-39-206(a), disseminating that information to prosecutors and law enforcement, *id*. § 40-39-206(b), facilitating other agencies' entry of new data into the registry, *id*. § 40-39-204(a), and managing the repository of original registry forms, *id*. § 40-39- 204(d).

*Id*. at 336, 341. The court concluded that "these functions fall squarely within the legitimate regulatory scheme which Tennessee is constitutionally allowed to provide and maintain." *Id*. at 341. But the court left open the question of whether Rausch enforces "potentially unconstitutional portions" of the SORVTA, including "those provisions categorizing offenders and prohibiting them from living, working, and traveling within certain areas." *Id*.

The Sixth Circuit remanded the matter to the district court to determine whether Rausch has enforcement authority over the allegedly unconstitutional SORVTA provisions contested by the plaintiffs, noting that he "cannot be enjoined from enforcing provisions of the [SORVTA] which he does not enforce." *Id*. at 341-42. On remand, the district court concluded that denial of summary judgment was still appropriate because Rausch has at least some responsibility for enforcing the SORVTA's geographic restrictions challenged by the plaintiffs and the plaintiffs had established that those restrictions constituted a retroactive, punitive punishment as applied to them. *See Does #1-9 v. Lee*, Case No. 3:21-cv-00590 (M.D. Tenn.). Following *Lee*, another district court considering a motion to dismiss found that, because Rausch is responsible for enforcing the SORVTA's classification and reporting requirements, the plaintiff therein had standing to sue Rausch. *See Million v. Rausch*, Case No. 3:22-cv-453, 2025 WL 1244790, at *3 (E.D. Tenn. Apr. 29, 2025).

Considering the Sixth Circuit's holding in *Lee*, the findings of the district courts in *Lee* and *Million*, and the liberal pro se pleading standard, Wooden has plausibly alleged facts sufficient to

establish standing for the Ex Post Facto Claim against Rausch in his official capacity.  Plaintiff

challenges the SORVTA broadly and its geographic restrictions specifically.  The *Lee* and *Million*

decisions suggest that Rausch has at least some enforcement authority for potentially

unconstitutional provisions of the SORVTA.   Combined, those considerations satisfy the

traceability requirement for Article III standing.  For example, Wooden alleges that Rausch, *inter*

*alia*, "has caused the sex offender registry to be used by the defendant parole officers and

supervisors to require that he move from the residence he shared with a family relative with minor

aged children causing him to be homeless [from] December 2022, . . . up to May 2023, . . . [and

be] restricted from visiting his relatives' homes."  (D.E. 1 ¶ 3.)

In *Snyder*, the Sixth Circuit found similar geographic restrictions in Michigan's sex

offender registry statute, Mich. Comp. Laws Ann. § 28.721, *et. seq.* (the "MI-SORA"),

unconstitutional, stating:

> A regulatory regime that severely restricts where people can live, work, and
> "loiter," that categorizes them into tiers ostensibly corresponding to present
> dangerousness without any individualized assessment thereof, and that requires
> time-consuming and cumbersome in-person reporting, all supported by—at best—
> scant evidence that such restrictions serve the professed purpose of keeping
> Michigan communities safe[,] . . . brands registrants as moral lepers solely on the
> basis of a prior conviction.  It consigns them to years, if not a lifetime, of existence
> on the margins, not only of society, but often, as the record in this case makes
> painfully evident, from their own families, with whom, due to school zone
> restrictions, they may not even live.  It directly regulates where registrants may go
> in their daily lives and compels them to interrupt those lives with great frequency.
> . . . We conclude that [MI-SORA] imposes punishment.

*Snyder*, 834 F.3d at 705-06 (finding the geographic restrictions in the MI-SORA violative of the

Ex Post Facto Clause).  Against this backdrop, the Ex Post Facto Claim against Rausch plausibly

alleges standing.

### State Actor

Rausch's state-actor argument against subject matter jurisdiction fares no better.  He

contends that he is not a proper party because the complaint does not allege facts showing that he

acted under color of state law as to the SORVTA.[9]  As explained above, Wooden plausibly alleges that Rausch, as TBI Director, has some enforcement authority for certain provisions of the SORVTA.  *See also Lee*, 102 F.4th at 336, 341-42 (finding that Rausch has some SORVTA enforcement authority).  This Defendant acts under color of state law when, as a state official, he enforces the SORVTA provisions tasked to him.

*Sovereign Immunity*

He also submits that he is immune from the Ex Post Facto Claim under the doctrine of sovereign immunity.  States have sovereign immunity from suits for money damages filed by private parties in federal court.  *See Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005) (en banc); *Tennessee State Conf. of the NAACP v. Lee*, 746 F. Supp. 3d 473, 509 (M.D. Tenn. 2024) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 57-73 (1996)).  Sovereign immunity extends not only to a state itself but to "arms of the State," such as certain state agencies.  *Ernst*, 427 F.3d at 358 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

A monetary damages suit against Rausch in his "official capacity" is construed as a suit against Tennessee that triggers its sovereign immunity.  *Will*, 491 U.S. at 71.  To the extent Wooden's official capacity claims against Rausch are for money damages, this Defendant stands in the shoes of the State of Tennessee.  He is immune from suit on those claims based on the doctrine of sovereign immunity.  *See Geomatrix,* 82 F.4th at 478 (noting that sovereign immunity is a jurisdictional defect); *Lupo v. Hargett*, No. 3:24-cv-01088, 2024 WL 4583524, at *3 (M.D. Tenn. Oct. 25, 2024) ("sovereign immunity relate[s] to subject matter jurisdiction"); *Newsome v.*

---

[9]Under § 1983, plaintiffs "must show that a person acting under color of state law deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shabazz v. Gabry*, 123 F.3d 909, 912 (6th Cir. 1997) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)) (finding that plaintiffs failed to establish an ex post facto claim).

*Lee*, No. 3:21-cv-00041, 2021 WL 1697039, at *5 (M.D. Tenn. Apr. 29, 2021) (citing *Ernst*, 427

F.3d at 358), *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017), and *Brown v. Lee*, No. 3:20-cv-

00916, 2020 WL 7864252, at *6 (M.D. Tenn. Dec. 30, 2020) (dismissing SORA-registrant's

official-capacity claims for money damages based on sovereign immunity)).  To that extent, the

motion to dismiss is GRANTED pursuant to Rules 12(b)(1) and 12(b)(6).  The Ex Post Facto

Claim for monetary damages against Rausch is DISMISSED WITHOUT PREJUDICE for lack of

subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and for failure to state a claim to relief,

*see* Fed. R. Civ. P. 12(b)(6).

To the extent the official capacity Ex Post Facto Claim against Rausch is for prospective

injunctive relief, that Defendant's contentions relative to standing, sovereign immunity, and

subject matter jurisdiction lack merit.  In *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the

Supreme Court carved out a "narrow exception" to the sovereign immunity doctrine.  *See Whole*

*Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).  The *Ex parte Young* exception to sovereign

immunity "provides that 'suits against state officials seeking equitable relief for ongoing violations

of federal law are not barred by the Eleventh Amendment.'"  *Josephson v. Ganzel*, 115 F.4th 771,

782 (6th Cir. 2024) (quoting *Morgan v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tennessee*.,

63 F.4th 510, 515 (6th Cir. 2023)).  Unlike the state itself, arms of the state, like TDOC, may still

be sued for prospective injunctive relief through the *Ex parte Young* framework when plaintiffs

seek such relief via official capacity claims.  *See Stanley v. Western Michigan Univ.*, 105 F.4th

856, 863-64 (6th Cir. 2024).  That is, an "official capacity" suit against a state officer does not

qualify as a suit against the state if it seeks to stop the officer from enforcing a state law that

conflicts with federal law.  *See Whole Woman's Health*, 595 U.S. at 39 (citing *Ex parte Young*,

209 U.S. at 159-60); *Will*, 491 U.S. at 71 n.10.  The narrow *Ex parte Young* exception—allowing

federal courts to enjoin state officials from enforcing state laws in ways that run counter to federal

laws—must be "based on a theory that the officer['s] . . . statutory authority is unconstitutional." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996).

To fall within this *Ex parte Young* exception to sovereign immunity, a plaintiff may not name just any state actor as the defendant. He may sue only those officials that the state charges with enforcing the challenged law. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015); *see Young*, 209 U.S. at 157. This part of *Ex parte Young* follows from the general principle that courts lack the power to *invalidate* state laws in the abstract; rather, courts have the power to bar state actors from *enforcing* those laws against the plaintiffs. *See Whole Woman's Health*, 595 U.S. at 44; *California v. Texas*, 593 U.S. 659, 672-73 (2021). To sue a state official under *Ex parte Young*, plaintiffs must identify the "legal or administrative actions" of the official that they seek to enjoin. *Russell*, 784 F.3d at 1048; *see also Deters*, 92 F.3d at 1416. The *Ex parte Young* exception to sovereign immunity requires that the particular defendant have a "connection with the enforcement of the act" in order to be suable. *Deters*, 92 F.3d at 1416 (quoting *Ex parte Young*, 209 U.S. at 157).

Wooden's allegations against Rausch for prospective injunctive relief fall within the sovereign immunity exception of *Ex parte Young*. First, the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Josephson*, 115 F.4th at 782 (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). Second, Plaintiff sues Rausch, whom he alleges is responsible for enforcing particular provisions of the SORVTA challenged in the complaint, *i.e.*, the Website Provision and the Reporting Requirement. *See Lee*, 102 F.4th at 341 (concluding that Rausch "is responsible for designing and issuing the forms which registrants use to report their information [and for] creating and maintaining the registry database," and ruling that convicted sex offenders had standing to allege Rausch's enforcement of the SORVTA's reporting requirements violated the Ex Post Facto

36

Clause).  The Supreme Court and the Sixth Circuit have upheld the constitutionality of publicly

available sex offender registries.  *See Smith v. Doe*, 538 U.S. 84, 92, 105-06 (2003); *Cutshall v.*

*Sundquist*, 193 F.3d 466, 470-71, 476-77 (6th Cir. 1999).  Moreover, Rausch's enforcement of the

SORVTA's Website Provision and Reporting Requirement "fall[s] squarely within the legitimate

regulatory scheme which Tennessee is constitutionally allowed to provide and maintain." *See Lee*,

102 F.4th at 341.  However, there is a dispositive detail in these decisions.  The Sixth Circuit in

*Lee* concluded that

> to the extent [Rausch's] office categorizes registrants based on the crime of their
> conviction and without an individualized assessment, that function may be
> questionable under *Snyder*, 834 F.3d at 705 ('A regulatory regime that . . .
> categorizes [people] into tiers ostensibly corresponding to present dangerousness
> without any individualized assessment . . . is something altogether different from
> and more troubling than Alaska's first-generation registry law').

*Id.* at 342.  Since that is precisely what Wooden contends in the complaint, he alleges facts that

could plausibly demonstrate an official capacity ex post facto claim to injunctive relief against

Rausch arising from the SORVTA's Website Provision and Reporting Requirement.  The motion

to dismiss is therefore DENIED under Rule 12(b)(1) as to the official capacity Ex Post Facto Claim

against Rausch for prospective injunctive relief that arises from the SORVTA's Website Provision

and Reporting Requirement.

The result is the same as to the official capacity Ex Post Facto Claim against Rausch for

prospective injunctive relief that arises from the SORVTA's Child Access Geographic Restriction.

*See id.* at 336 (finding that convicted sex offenders had standing to bring action against Rausch

alleging that imposition of the SORVTA's geographical restrictions violated the Ex Post Facto

Clause because "Rausch is subject to suit and possible injunction regarding those portions of

Tennessee's statutes that come under his responsibility or enforcement authority").  The motion is

DENIED pursuant to Rule 12(b)(1) as to the official capacity Ex Post Facto Claim against Rausch

for prospective injunctive relief that arises from the SORVTA's Child Access Geographic Restriction.

<u>Ex Post Facto Claim for Money Damages and Prospective Injunctive Relief Against Rausch in His Individual Capacity.</u>

To the extent Wooden sues Rausch in his individual capacity, he fails to state a claim to relief. Plaintiff has not pleaded any specific plausible allegations that Rausch is personally involved in the enforcement against Wooden of the SORVTA provisions challenged in the complaint. Rather, Wooden's allegations against Rausch focus exclusively on the Defendant's official position as TBI Director:

> [Rausch] has refused to obey the ex post facto provisions of the Constitution. . . , [He] has caused the sex offender registry to be used by the [D]efendant parole officers and supervisors to require that [Wooden] move from the residence he shared with a family relative with minor aged children[,] causing him to be homeless [from] December 2002 . . . to May 2023 . . . .

(D.E. 1 ¶ 3.) Plaintiff offers no facts from which to plausibly infer that Rausch "encouraged the specific incident of misconduct [described in the complaint] or in some other way directly participated in it." *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). In short, nothing in the complaint suggests, much less demonstrates, that Rausch "was personally involved in any of the events g[i]v[ing] rise to [Wooden's] claims. *See Dickerson v. Tennessee Dep't of Corr.*, No. 3:15-cv-0238, 2015 WL 1345537, at *1 (M.D. Tenn. Mar. 23, 2015) (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)). "'[N]aked assertions' devoid of 'further factual enhancement'" will not suffice. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (brackets omitted). Conclusory allegations or legal conclusions masquerading as factual allegations are also insufficient. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Plaintiff's broad generalizations that Rausch's "application of the [SORVTA] violates the ex post facto laws" and that he "has refused to obey the ex post facto provisions of the Constitution" (D.E. 1 ¶ 3) fall into the category of sweeping, unsupported generalization.

For these reasons, the Ex Post Facto Claim against Rausch in his individual capacity is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### REMAINING ALLEGATIONS OF THE EX POST FACTO CLAIM.

The Court turns now to the complaint's allegations that remain following the analyses above, *i.e.*, the Ex Post Facto Claim against Rausch arising from the Drug-Testing Requirement, the Website Provision, the Reporting Requirement, the Child Access Geographic Restriction, and the No-Minors Residence Restriction. In the motion, the Defendants argue that the Child Access Geographic Restriction, although "constitutionally untested," is not retroactive punishment and that the Website Provision, Reporting Requirement, Drug-Testing Requirement, and Treatment Requirement are "clearly constitutional." (D.E. 34-1 at PageID 260.)

Parole Conditions versus SORVTA.

*Drug-Testing Requirement, No-Minors Residence Restriction, and Treatment Requirement*

Wooden's challenges to the Drug-Testing Requirement, the No-Minors Residence Restriction, and the Treatment Requirement are not cognizable under § 1983. The SORVTA does *not* mandate drug testing, does *not* prohibit offenders living with minors where the original sex offense victim was an adult, and does *not* require sex offender treatment. *See* Tenn. Code Ann. §§ 40-39-201 to -218. Rather, those requirements and limitations are conditions of Wooden's parole—not provisions of the SORVTA—to wit:

> (1) in Wooden's signed October 14, 2022, Parole Certificate, he (a) agreed that he "will submit to drug screens or drug tests as directed by [his] Probation/Parole Officer" and (b) consented to "Special Conditions" of, *inter alia*, "[r]andom [d]rug [s]creens" (D.E. 27-1 at PageID 214); and

> (2) in Wooden's signed October 19, 2022, Specialized Parole Conditions for Sex Offenders, he (a) agreed that he will not "date, befriend, reside or unite with anyone who has children under the age of [eighteen], except if those children are

biologically [his]" and (b) acknowledged his "treatment plan pursuant to [Tennessee Code Annotated] § 39-13-705."[10]  (D.E. 27-2 at PageID 215-16.)

The Court lacks subject matter jurisdiction over the official capacity Ex Post Facto Claim against Rausch for prospective injunctive relief arising from his parole requirements.  For example, the Drug-Testing Requirement is a condition of Plaintiff's parole, not a provision of the SORVTA. *See* Tenn. Code Ann. §§ 40-39-201 to -218, 39-13-705.  He does not allege that Rausch has any enforcement authority over the conditions of his parole, and the Court finds no statutory authority for such.  Wooden has no standing against Rausch regarding the Drug-Testing Requirement.  The motion to dismiss is therefore GRANTED as to the official capacity Ex Post Facto Claim against Rausch for prospective injunctive relief arising from the Drug-Testing Requirement.  That claim is DISMISSED WITH PREJUDICE.  Under *Lee*, there are no facts that can demonstrate an official capacity ex post facto claim to injunctive relief against Rausch arising from the Drug-Testing Requirement, which is not a SORVTA provision enforced by Rausch.  *See Lee*, 102 F.4th at 341-42.

Like the Drug-Testing Requirement, the parole restriction against Plaintiff living with minors and the requirement that he participate in the SOTP do not constitute retroactive punishment in violation of the Ex Post Facto Clause.[11]  Wooden's allegations about those parole-

---

[10]In any event, requiring mandatory sex offender treatment is not "punishment" for the purposes of the Ex Post Facto Clause.  *See Froman v. Peterson*, 74 F. App'x 484, 486 (6th Cir. 2003); *Lewis v. Campbell*, 62 F. App'x 109, 110 (6th Cir. 2003).

[11]Moreover, the SORVTA only prohibits living with a minor child where the sex offender's victim was a child.  *See* Tenn. Code Ann. § 40-39-211(c) (if a sex offender's victim was a minor, the offender may not "knowingly reside or conduct an overnight visit at a residence in which a minor resides or is present").  Plaintiff's victims were adult women.  *See Wooden*, 658 S.W.2d at 558 ("Each of [Wooden's] victims was a young, white female who lived in an apartment complex and was alone at the time of the offense.  In each case, [Wooden] would be in the apartment when the victim arrived or would enter shortly after the victim entered the apartment.").  Thus, § 40-39-211(c)'s restriction is inapplicable to him.

based restrictions and requirements are not really ex post facto challenges. The Ex Post Facto Claim arising from the No-Minors Residence Restriction and the Treatment Requirement fails to state a claim to relief. To that extent, the motion is GRANTED as to the Ex Post Facto Claim against Rausch in his official capacity for prospective injunctive relief arising from the No-Minors Residence Restriction and the Treatment Requirement under Fed. R. Civ. P. 12(b)(6). The dismissal is WITH PREJUDICE.

*Website Provision*

Plaintiff complains that the SORVTA requires his "information" be published on Tennessee's sex offender registry website. In the motion, Defendants argue that the Website Provision is "clearly constitutional." (D.E. 34-1 at PageID 254.)

In *Lee*, the Sixth Circuit gave the district court guidance for adjudicating ex post facto claims about the SORVTA. District courts are "[t]o elide the [SORVTA] statute" by:

[1] "look[ing] at each [challenged] restriction";

[2] "compar[ing] it to the guidance issued in *Smith, Cutshall*, *Bredesen*, and *Snyder*;

[3] "apply[ing] the [*Kennedy v.*] *Mendoza-Martinez*[,] [372 U.S. 144 (1963)] factors where those cases come up short"; and

[4] "issu[ing] a remedy tailored to the statute."

*Lee*, 102 F.4th at 341. A summary of those cases is helpful for analysis of Wooden's Ex Post Facto Claim.

- In *Smith*, the Supreme Court upheld provisions of Alaska's sex offender registry statute that required sexual offenders to register with the state and provide personal information, which was made available to the public. Under Alaska's law, which allowed for publicly available registries of prior offenders, offenders were free to move where they wish and to live and work as other citizens, with no supervision. *Smith*, 538 U.S. at 92, 105-06.

- In *Cutshall*, the Sixth Circuit upheld Tennessee's predecessor registration statute that required offenders to report personal information to Tennessee authorities, including their names, date of birth, residence, employment,

41

driver's license number, and other information.  Much of that information was then made available to the public.  The Sixth Circuit concluded that the reporting and registration requirements did not violate the Ex Post Facto Clause. *Cutshall*, 193 F.3d at 470-71, 476-77.

- At issue in *Bredesen* were early versions of Tennessee's sex offender registration and monitoring statutes, which required violent sexual offenders to (1) comply with the registration, verification, and tracking requirements of the TBI Sexual Offender Registry for the remainder of their lives and (2) consent to wearing ankle monitor tracking devices.  *Bredesen*, 507 F.3d at 1001-02, 1005-07.  At the time the suit was filed, the law did not impose any restrictions on where registrants could live, work, or move.  The Sixth Circuit concluded that, although undoubtedly cumbersome and inconvenient, the ankle device did not immediately identify plaintiff as "a criminal, let alone a sex offender."  *Id*. at 1005.  The Sixth Circuit reasoned that, therefore, was no reason to deviate from its previous conclusion—and that of other circuits—that the law did not violate the Ex Post Facto Clause.  *Id*. at 1007.

- In *Snyder*, the Sixth Circuit enjoined enforcement of two amendments to Michigan's sex offender registry law.  There, two sex offenders challenged the 2006 and 2011 Michigan amendments that prohibited registrants "from living, working, or 'loitering' within 1,000 feet of a school" and required "all registrants to appear in person 'immediately' to update information such as new vehicles or 'internet identifiers' (*e.g.*, a new email account)."  *Snyder*, 834 F.3d at 698.  The Sixth Circuit emphasized that the Constitution "does not bar *all* retroactive lawmaking, but only retroactive punishment."  *Id*. at 699 (emphasis added).  The Sixth Circuit concluded that the "law has had a significant impact on each of [the plaintiffs] that reaches far beyond the stigma of simply being identified as a sex offender on a public registry."  *Id*. at 698.  Applying the *Mendoza-Martinez* factors, the Sixth Circuit noted that although the Supreme Court's decision in *Doe* allowed for publicly available registries of prior offenders, Michigan's amendments went beyond that.  *Id*. at 701-05.  In contrast with Alaska's law evaluated in *Smith*, where offenders were "free to move where they wish and to live and work as other citizens, with no supervision," Michigan's registrants were subjected to onerous conditions that closely resembled "banishment and public shaming, and [had] a number of similarities to parole/probation."  *Id*. at 703.  Based on this finding that the amendments imposed punishment instead of simply establishing a civil registry, the Sixth Circuit held that "[t]he retroactive application of [Michigan's] 2006 and 2011 amendments to [p]laintiffs is unconstitutional, and it must therefore cease."  *Id*. at 706.

- The *Mendoza-Martinez* factors, used when evaluating the retroactive effect of a law, consider whether the challenged law (1) "has been regarded in our history and traditions as a punishment"; (2) "imposes an affirmative disability or restraint"; (3) "promotes the traditional aims of punishment"; (4) "has a rational

connection to a nonpunitive purpose"; and (5) "is excessive with respect to this purpose." *Mendoza-Martinez*, 372 U.S. at 168-69.

Courts have consistently upheld sex offender publication requirements, including Tennessee's, as nonpunitive. *See Smith*, 538 U.S. at 98 (Alaska's statute requiring sex offender registry publication); *Lee*, 102 F.4th at 339-41 ("[Tennessee's] original sex offender registry statute [that] created a simple registration, tracking, and publication system . . . was clearly constitutional under *Smith* and *Cutshall*. . . . [A] registry kept by the state and disclosed publicly is constitutionally sound.").[12]

Wooden, however, challenges more than just the Tennessee sex offender registry itself. He takes issue with his "regist[ration] as a violent sex offender" in the database. (D.E. 1 ¶ 7.) That is a distinction with a difference. While the *Lee* Court acknowledged that creation and maintenance of the sex offender registry database itself is a constitutional and legitimate regulatory scheme, "categoriz[ation] [of] registrants [in the database] based on the crime of their conviction and without an individualized assessment" could "potentially warrant[ an injunction.]" *Lee*, 102 F.4th at 341-42; *see also Snyder*, 834 F.3d at 704-05.

---

[12]*See also Chatman v. Jeffreys*, No. 23-1401, 2024 WL 94103, at *2 (7th Cir. Jan. 9, 2024) ("[T]he district court rightly determined that the [Illinois Murderer and Violent Offender Against Youth Registration] Act's purpose is to ensure public safety, not to humiliate or punish people with criminal histories. And contrary to [plaintiff's] claim that registration invites public humiliation, 'the dissemination of accurate information about a criminal record, most of which is already public' is not punishment for purposes of the Ex Post Facto Clause."); *United States v. Diaz*, 967 F.3d 107, 111 (2d Cir. 2020) (per curiam) ("[T]he mandatory registration and notification requirements of New York State's Sex Offender Registration Act . . . are nonpunitive in purpose and effect. [T]he Supreme Court reached the same conclusion in its review of an Ex Post Facto challenge to Alaska's Sex Offender Registration Act"); *Holland v. Governor of Georgia*, 781 F. App'x 941, 945 (11th Cir. 2019) (per curiam) ("[L]ike the registration statutes that have been upheld by both the Supreme Court and this Court, [Georgia's sex offender registration statute] imposes a civil regulatory regime rather than punishment. Like the registration statute[] upheld in *Smith*, [Georgia's statute] requires various categories of sex offenders to provide personal information to the state, keep that information updated, and the state to publish that information. Such a scheme does not implicate the Ex Post Facto clause because it is civil and regulatory in nature").

Plaintiff alleges facts arising from the Website Provision which, if true, would support a claim entitling him to relief from Rausch. His allegation of his unconstitutional categorization as a "violent offender" is sufficient to plausibly claim "more than a sheer possibility" that he is entitled to relief regarding the provision. *See Iqbal*, 556 U.S. at 678. Pursuant to Rule 12(b)(6), the motion is DENIED as to the Ex Post Facto Claim arising from the Website Provision for prospective injunctive relief against Rausch in his official capacity.

*Reporting Requirement*

Wooden's challenge to the Reporting Requirement fails because that provision is not punitive. He complains that he must report in person "monthly" to update his information in the sex offender registry. (D.E. 1 ¶ 18.) The Sixth Circuit, however, has upheld the SORVTA's Reporting Requirement as not punitive, stating:

> [T]he Supreme Court allows states to impose and enforce regulatory regimes which require sexual offenders to register with the state and supply pertinent personal information, which is then made available to the public, often widely so. . . . [The SORVTA's] registration, reporting, and surveillance components are not of a type that we have traditionally considered as a punishment . . . . *Snyder* does not call into question Tennessee's in-person reporting requirements.

*Lee*, 102 F.4th at 338-39 & n.2; *see also McGuire v. Marshall*, 50 F.4th 986, 1018 (11th Cir. 2022) (upholding the Alabama sex offender registry statute's weekly reporting requirements as nonpunitive). Plaintiff offers no facts or arguments convincing the Court to reject the holdings in *Smith*, *Bredesen*, and *Lee*. (*See* D.E. 1 ¶ 7 (alleging only that Wooden is subject to "in person reporting . . . every [thirty] days"); *id*. ¶ 10 (alleging simply that he must "report monthly to the Madison County Probation and Parole office")).

Pursuant to Rule 12(b)(6), the motion is GRANTED as to the Ex Post Facto Claim arising from the Reporting Requirement for prospective injunctive relief against Rausch in his official capacity. Given the holdings in *Smith*, *Bredesen*, and *Lee*, the Ex Post Facto Claim arising from

the Reporting Requirement against Rausch in his official capacity for prospective injunctive relief

is DISMISSED WITH PREJUDICE for failure to state a claim to relief.

*Child Access Geographic Restriction*

The SORVTA's Child Access Geographic Restriction provides, in pertinent part:

> While mandated to comply with the requirements of this chapter, no sexual offender, as defined in § 40-39-202, or violent sexual offender as defined in § 40-39-202, shall knowingly establish a primary or secondary residence or any other living accommodation or knowingly accept employment within one thousand feet . . . of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center, or public athletic field available for use by the general public.

> While mandated to comply with the requirements of this part, no sexual offender or violent sexual offender, whose victim was a minor, shall knowingly reside or conduct an overnight visit at a residence in which a minor resides or is present.  Notwithstanding this subsection (c), the offender may reside, conduct an overnight visit, or be alone with a minor if the offender is the parent of the minor . . . .

> No sexual offender, as defined in § 40-39-202, or violent sexual offender, as defined in § 40-39-202, shall knowingly:  (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen . . . years of age are present; (B) Stand, sit idly, whether or not the offender is in a vehicle, or remain within one thousand feet . . . of the property line of any building owned or operated by any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when children under eighteen . . . years of age are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there; or (C) Be in any conveyance owned, leased or contracted by a school, licensed day care center, other child care facility or recreation center to transport students to or from school, day care, child care, or a recreation center or any related activity thereof when children under eighteen . . . years of age are present in the conveyance.

Tenn. Code Ann. § 40-39-211(a)(1), (c)(1), (d)(1).

Plaintiff complains that he is subject to "restrictions on where he can live or work [and] restrictions on his movements." (D.E. 1 ¶ 7.) He alleges that he cannot "work, reside nor stand idly by within 1,000 feet of a school, play-ground or day care" (*id.* ¶ 8); that he was homeless from November 30, 2022, through February 22, 2023, because he could not live with his brother, whose house was "within 1,000 feet of a child day care" (*id.* ¶ 11); and that he has "been instructed that he is prohibited from visiting elderly relatives who are above the age of [seventy-six] to [seventy-nine] years old because they are located near a school, childcare facility or playground" (*id.* ¶ 16). For the reasons explained below, his challenge to the Child Access Geographic Restriction fails to state a claim to relief.

The *Smith, Bredesen*, and *Cutshall* line of cases are not squarely on point with the Child Access Geographic Restriction that Wooden challenges. *See Smith*, 538 U.S. at 92, 105-06 (challenge to Alaska's sex offender public registry); *Bredesen*, 507 F.3d at 1001-02, 1005-07 (challenging an early version of Tennessee's sex offender registry statute that required ankle monitoring devices); *Cutshall*, 193 F.3d at 470-71, 476-77 (objecting to Tennessee's predecessor sex offender statute of reporting and registration requirements).

The MI-SORA examined by the Sixth Circuit in *Snyder*, however, is analogous to the Child Access Geographic Restriction at issue here. Similar to the SORVTA's Child Access Geographic Restriction, the MI-SORA: (1) prohibited registrants from living, working, or loitering within 1,000 feet of a school; (2) posed "trouble [for the *Snyder* plaintiffs] finding a home in which they can legally live or a job where they can legally work . . . [a]s a result of the school zone restrictions[,] [which] also kept those . . . who have children (or grandchildren) from watching them participate in school plays or on school sports teams"; and (3) "kept [p]laintiffs from visiting public playgrounds with their children for fear of 'loitering.'" *Snyder*, 834 F.3d at 698. Applying the *Mendoza-Martinez* factors, the Sixth Circuit concluded that the MI-SORA:

(1) "meets the traditional definition of punishment," *id*. at 703;

(2) had "sweeping conditions or [occupation-]disbarment without some nexus between the regulatory purpose and the job at issue," *id*. at 703-04;

(3) lacked "provision for individualized assessments of proclivities or dangerousness," and had no demonstration of rational relation to a nonpunitive purpose, such as a "suggest[ion] that the residential restrictions have any beneficial effect on recidivism rates," *id*. at 704-05; and

(4) was excessive because "while the statute's efficacy is at best unclear, its negative effects are plain on the law's face. . . . The punitive effects of [its] blanket restrictions thus far exceed even a generous assessment of their salutary effects," *id*. at 705.

Weighing these factors, the appeals court concluded that the MI-SORA "imposes punishment" and its "retroactive application . . . is unconstitutional." *Id*. at 705-06.

Defendants do not directly address the *Mendoza-Martinez* factors in the dispositive motion. Instead, they simply contend in conclusory fashion that the Child Access Geographic Restriction is "not retroactive punishment." (D.E. 34-1 at PageID 263.) The argument is unpersuasive, however. For example, Defendants contend that "[m]ost circuits"—other than the Sixth Circuit— "agree that provisions like [Tennessee's Child Access Geographic Restriction] are not 'punishment." (*Id*. (citing decisions from the Fourth, Seventh, Tenth, and Eleventh circuits)). What matters, though, is that the *Sixth Circuit* has concluded the MI-SORA—which mirrors the Child Access Geographic Restriction—*is* punitive. *See Snyder*, 834 F.3d at 701-06.[13]

Defendants argue that Wooden's parole is conditioned on compliance with monitoring requirements such as those in the SORVTA. They jump from that broad observation to the conclusion that the Child Access Geographic Restriction is, therefore, constitutionally enforceable.

---

[13]In the motion to dismiss, Defendants point out that the Sixth Circuit in *Lee* "distinguished 'Michigan's reporting requirements'" as "not on all fours with Tennessee's requirements." (D.E. 34-1 at PageID 262 (citing *Lee*, 102 F.4th at 339 n.2).) That distinction, however, is relevant only as to ex post facto analysis of the SORVTA's Reporting Requirement, not its Child Access provision.

However, their premise ignores the indisputable principle that parole can only be conditioned on compliance with laws that are, in the first instance, constitutional. To find otherwise could sanction overreaching and possibly unconstitutional state regulation of sex offender parolees under the premise of "conditions of parole."

Finally, Defendants submit that "Tennessee need not 'make individualized judgments' regarding a sex offender's recidivism risk 'before imposing'" the Child Access Geographic Restriction. (D.E. 34-1 at PageID 264.) In support, they point out that, under *Smith*, the Ex Post Facto Clause "does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." (*Id.* at PageID 265 (quoting *Smith*, 538 U.S. at 103). However, "rational connection to a non-punitive purpose" is not the sole determinative factor under the *Mendoza-Martinez* analysis. *See Smith*, 538 U.S. at 97. Rather, it is one of five factors that the Sixth Circuit found, in balance, rendered the MI-SORA as violative of the Ex Post Facto Clause. *Snyder*, 834 F.3d at 704-05.

The Defendants rely on *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), *application filed* (No. 24A483) (U.S. Nov. 15, 2024), to insist that certain categories of crimes create a presumption that an offender will continue to be dangerous. However, the Sixth Circuit in *Snyder* found that "recent empirical studies" cast doubt on the pronouncements in *Smith* to the effect that recidivism rates among sex offenders are "frightening and high" and that, therefore, sex offenders need deterrence like sex offender geographic restriction laws. *See Snyder*, 834 F.3d at 704. The appellate court criticized the MI-SORA for making "no provision for individualized assessments of proclivities or dangerousness." *Id.* at 705.

Defendants' contentions do not change the *Mendoza-Martinez* analysis. At issue in *Williams* was whether a person is sufficiently "dangerous" such that he can, consistent with the Second Amendment, be prohibited from possessing a firearm under 18 U.S.C. § 922(g)(1), which

bars possession of a firearm by any person who has been convicted of a felony or a misdemeanor punishable by a prison term exceeding one year. The *Williams* Court found that certain categories of violent crimes, such as rape, create a presumption that an offender would continue to be "dangerous." *Williams*, 113 F.4th at 658, 660. The case is, however, inapposite to the instant case. Defendants cite no authority for the proposition that "dangerous" for the purpose of prohibition on the possession of firearms under the Second Amendment is coterminous with "punitive" for the purpose of retroactive punishment under the Ex Post Facto Clause. The Court is unaware of any such precedent.

For the foregoing reasons, the factual allegations of the Ex Post Facto Claim arising from the Child Access Geographic Restriction are sufficient to plausibly claim that the SORVTA unconstitutionally "restricts where [he] can live, work, and 'loiter,'" and subjects him to onerous geographic limitations without an individualized assessment of his dangerousness. *See Snyder*, 834 F.3d at 705. Plaintiff alleges "more than a sheer possibility" that he is entitled to prospective injunctive relief from Rausch in his official capacity regarding the Child Access Geographic Restriction. *See Iqbal*, 556 U.S. at 678. Therefore, the motion to dismiss is DENIED as to the Ex Post Facto Claim for prospective injunctive relief from Rausch on this issue.

<u>CONCLUSION</u>

For the reasons explained above:

A.    The motion to dismiss is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief as a matter of law, as to:

(1) the Ex Post Facto Claim against Governor Lee in his individual capacity, and

(2) the Ex Post Facto Claim against Rausch in his official capacity for prospective injunctive relief arising from

(a) the Drug-Testing Requirement,

(b) the Reporting Requirement,

(c) the No-Minors Residence Restriction, and

(d) the Treatment Requirement.

These claims are DISMISSED WITH PREJUDICE. Leave to amend should not be granted where a plaintiff cannot cure the deficiency in his complaint. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that . . . amending the complaint would be futile, then a sua sponte dismissal may stand."); *see also Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

B.    The motion to dismiss is GRANTED under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, as to:

(1) the Ex Post Facto Claim against Governor Lee in his official capacity for money damages and prospective injunctive relief,

(2) the Ex Post Facto Claim for money damages against Rausch in his official capacity,

(3) the Ex Post Facto Claim against Dr. Adler in his official capacity, and

(4) the Ex Post Facto Claim for money damages against Strada, Hansen, and the Parole Personnel Defendants in their official capacities.

These claims are DISMISSED WITHOUT PREJUDICE.

C.    The motion to dismiss is GRANTED in accordance with Fed. R. Civ. P. 12(b)(6) for failure to allege facts stating a claim to relief, as to:

(1) the Ex Post Facto Claim against Governor Lee in his individual capacity,

(2) the Ex Post Facto Claim against Dr. Adler in his individual capacity,

(3) the Ex Post Facto Claim against Rausch in his individual capacity,

(4) the Ex Post Facto Claim against Strada, Hansen, Mann, Rudolph, Miller, and Lanier in their individual capacities,

50

(5) the Equal Protection Claim for money damages and prospective injunctive relief against all Defendants in their official and individual capacities, and

(6) the First Amendment Claim for money damages and prospective injunctive relief against all Defendants in their official and individual capacities.

These claims are DISMISSED WITHOUT PREJUDICE.

D.    The claims enumerated in Paragraphs (B) and (C) above are collectively referred to as the "Claims Dismissed Without Prejudice." A district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As Wooden "may be able to allege facts that plausibly [state an ex post facto, equal protection, or free exercise claim], now that [he] know[s] [the Court's] view of the law after [*Lee*]," *see Tennessee State Conf.*, 746 F. Supp. 3d at 511, he may seek to amend his complaint with respect to those claims pursuant to Rule 15.

E.    The motion to dismiss is DENIED as to:

(1)   The official capacity Ex Post Facto Claim against Rausch for prospective injunctive relief arising from the SORVTA's Website Provision and Reporting Requirement,

(2)   The official capacity Ex Post Facto Claim against Rausch for prospective injunctive relief arising from the SORVTA's Child Access Geographic Restriction and No-Minors Residence Restriction,

(4) The Ex Post Facto Claim arising from the Website Provision for

(a) money damages and prospective injunctive relief against Strada, Hansen, and the Parole Personnel Defendants in their official capacities and

(b) prospective injunctive relief against Rausch in his official capacity, and

(4) The Ex Post Facto Claim arising from the Child Access Geographic Restriction for

(a) money damages against the Parole Personnel Defendants in their official and individual capacities,

(b) prospective injunctive relief against Strada, Hansen, and the Parole Personnel Defendants in their official capacities, and

(c) prospective injunctive relief against Rausch in his official capacity, and

(5) The Ex Post Facto Claim arising from the Child Access Geographic Restriction against Davidson and Pittman in their individual capacities.

IT IS SO ORDERED this 18th day of September 2025.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE